IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| SUMMER WEALTH MANAGEMENT, L.L.C., AS ASSIGNEE OF PINNACLE SUMMER INVESTMENTS, et al. | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:15cv1660(JCC/JFA) |
| INVESTMENT PLACEMENT GROUP, | ) ) | |
| Defendant. | ) | |

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Summer Wealth Management, L.L.C.'s ("Plaintiff" or "SWM") Motion for Temporary Restraining Order. [Dkt. 3] For the following reasons, the Court denies Plaintiff's Motion for a Temporary Restraining Order ("TRO").

### I. Background

Plaintiff has filed this breach of contract action as the assignee of Pinnacle Summer Investments, L.L.C., formerly known as Edelman Financial Group ("TEFG"), and Global Financial Services, L.L.C. ("GFS") against Defendant Investment Placement Group ("IPG" or "Defendant"), Inc. claiming it breached the non-solicitation clause of a Non-Disclosure Agreement ("NDA") between the parties.

1

Plaintiff and Defendant differ substantially on their versions of the facts in this case. All parties in this case are wealth management and finance companies with significant presences in South America. GFS is a subsidiary of TEFG. Both parties agree that TEFG and IPG entered into a Non-Disclosure Agreement in April 2014 in order to pursue future business opportunities together. (Pl.'s Mem. in Supp. [Dkt. 4] at 1.) That NDA contained a non-solicitation clause reading:

> The parties hereto agree that for a period of two years they will not at any time, directly or indirectly, by their own means or through the assistance of others, solicit or encourage any person employed by the other party hereto or any of its affiliates, to work for any employer other than their current employer or its affiliates, or to leave the employment of their current employer or its affiliates.

(Ball Decl. Ex. C [Dkt. 5-3].) Plaintiff alleges that TEFG and IPG then proceeded to exchange "a wealth of confidential data and information" (Pl.'s Mem. in Supp. at 6). Defendant, on the other hand, asserts that this exchange was entirely one sided, with IPG providing TEFG copious amounts of confidential information as requested, but TEFG sending no confidential information the other way. (Def.'s Mem. in Opp. [Dkt. 8] at 2.) The parties agree that the confidential information was exchanged so that TEFG could examine the possibility of purchasing IPG, and that any talk of a deal ended in January or February of 2015. Both parties further agree that in December

2

of 2015, two GFS employees, Mr. Tellez and Mr. Garza, left GFS to go work at IPG. Plaintiff alleges that these employees left after being solicited by IPG. (Compl. [Dkt. 1] at ¶ 18.) Defendant denies that IPG initiated the contact, arguing that these employees decided unilaterally to leave GFS and their interest in IPG pre-dated the signing of the NDA. (Def.'s Mem. in Opp. at 7.) Defendant points to Mr. Tellez having been a college roommate of one of IPG's executives as the source of his pre-existing interest in going to IPG. (*Id.* at 8.) Plaintiff now seeks a TRO and a preliminary injunction preventing IPG from employing Tellez and Garza through the end of the NDA's two-year term. In the alternative, Plaintiff asks for a TRO and a preliminary injunction enjoining IPG from soliciting any clients Tellez and Garza serviced while employed at GFS through the end of the NDA's two-year term.

## II. Standard of Review

"The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res.*

*Def. Counsel*, 555 U.S. 7, 20 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter*, 129 S. Ct. at 374), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010). In order to meet his burden on the first requirement, a plaintiff seeking a preliminary injunction must make a *clear showing* that he will likely succeed on the merits at trial. *Id.*

### III. Analysis

#### A. Jurisdiction and Venue

As an initial matter, this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000.00. Venue is proper under 28 U.S.C. § 1391, as the claims for relief arise from the breach and enforcement of a non-disclosure agreement containing a forum selection clause naming the State or Federal Courts located in the City of Alexandria, Virginia as the exclusive jurisdiction and venue for actions arising out of the contract.

#### B. TRO and Preliminary Injunction

##### 1. Likelihood of Success on the Merits

A plaintiff seeking a TRO must first establish that he is likely to succeed on the merits. Here, Plaintiff brings only one claim, for breach of contract.

As this Court sits in diversity, the law of the forum state must be applied. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Under Virginia law, contractual choice of law or choice of venue clauses are *prima facie* valid and should be enforced, unless a party challenges enforcement and establishes that such provisions are unfair, unreasonable, or the result of fraud or unequal bargaining power. *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 S.E.2d 804, 807 (1990). Neither party here challenges the application of the forum selection or choice of law provisions in the non-disclosure agreement. Virginia law applies to Plaintiff's claim.

To prevail on its breach of contract claim, Plaintiff must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership*, No. 1:08cv955, 2009 WL 111603, *8 (E.D. Va. Jan. 14, 2009) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). In determining the obligations created by a contract, Virginia law adheres to the "plain meaning" rule, giving meaning to every clause and giving every word its usual, ordinary, and popular meaning. *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792 (1983).

5

> The non-solicitation clause of the NDA reads:
>
> The parties hereto agree that for a period of two years they will not at any time, directly or indirectly, by their own means or through the assistance of others, solicit or encourage any person employed by the other party hereto or any of its affiliates, to work for any employer other than their current employer or its affiliates, or to leave the employment of their current employer or its affiliates.

(Ball Decl. Ex. C.) The NDA, therefore, does not create an obligation to refrain from *employing* any person currently employed by the other party. The parties have merely obligated themselves to refrain from "solicit[ing] or encourage[ing]" anyone presently employed by the other party or its affiliates to come work for them or their affiliates. "The plain meaning of the word 'solicit' requires the initiation of contact." *Mona Elec. Group, Inc. v. Truland Service Corp.*, 56 Fed.Appx. 108, 110 (4th Cir. 2003). The courts of Virginia have had opportunity to define the plain meaning of the word "encourage" once, looking to Webster's Third New International Dictionary, and holding only that "each of these defining terms describes the word [encourage] as encompassing an affirmative act, not an omission or failure to act." *Peace v. Com.*, No. 2651-99-2, 2000 WL 1693428, at *2 (Va. Ct. App. Nov. 14, 2000). However, Virginia courts offer no guidance beyond that point on what kinds of affirmative acts might be considered encouragement. In fact, Virginia courts have held that the terms "solicit,

6

encourage or support" in a non-competition provision are "ambiguous" and ought to be construed against the drafter of the agreement. *BB&T Ins. Servs. v. Thomas Rutherfoord, Inc.*, 80 Va. Cir. 174, 179 (2010). As TEFG drafted the NDA, the Court interprets the word "encourage" in the non-solicitation clause of the NDA to require, at the very least, an affirmative act which "stimulate[s]", "incite[s]", "call[s] forth," or "produce[s]," an employee's decision to leave employment with one party or its affiliates and take up employment with the other party or its affiliates. Therefore, if a person employed by TEFG or its affiliates were to leave their position and then later become an employee of IPG without being solicited or encouraged to do so by IPG or its affiliates, no breach of the non-solicitation clause would have occurred.

At this stage, Plaintiff has not produced any evidence that IPG solicited or encouraged Mr. Tellez or Mr. Garza to leave their employment and come work for IPG. Plaintiff argues that IPG violated the non-solicitation clause and "willfully ignored its contractual obligation under the NDA when it hired Tellez and Garza prior to the expiration of the NDA's two-year term." (Pl.'s Mem. in Supp. at 11.) However, as discussed above, the subsequent employment of Mr. Tellez and Mr. Garza by IPG alone does not violate the non-solicitation clause of the NDA. Rather, Plaintiff must show that IPG solicited or

7

encouraged Mr. Tellez or Mr. Garza to leave their employment and come work for IPG in order to show a breach of the NDA. Plaintiff does not point to any evidence showing that IPG solicited or encouraged Mr. Tellez or Mr. Garza, and therefore it has not made a clear showing at this stage that it is likely to succeed on the merits.

    2.    <u>Irreparable Harm</u>

The plaintiff must "make a clear showing that it is likely to be irreparably harmed absent preliminary relief." *Real Truth About Obama*, 575 F.3d at 347 (emphasis added). "[G]enerally irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973)). Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quotation and citation omitted). The continuing breach of a contract resulting in a plaintiff losing customers, opportunity to attract new costumers, and goodwill in the industry can be enough to constitute an irreparable harm. *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 442 Fed.App'x 776, 785 (4th Cir. 2011).

In the instant action, Plaintiff has no evidence that it is facing any actual imminent damages. Specifically, the Plaintiff has no evidence that their former employees, Mr. Tellez and Garza, are actually soliciting their old clients, or that it has lost any clients as a result of Mr. Tellez and Mr. Garza moving to IPG. Because Plaintiff cannot show that absent injunctive relief, Mr. Tellez and Mr. Garza will solicit their former clients and attempt to persuade them to transfer their business from SWM to IPG, it has not shown that without temporary injunctive relief it will suffer immediate and irreparable harm. Because the plaintiff has failed to make a clear showing that it is likely to succeed on the merits and have failed to make a clear showing that it faces irreparable harm absent injunctive relief, the Court denies the Plaintiff's Motion for a TRO. Because the Plaintiff must satisfy each of the requirements outlined in *Winter v. Natural Resources Defense Council* in order to receive a TRO or a preliminary injunction, the Court need not address the balance of the equities in this case or whether an injunction would be in the public interest.

## IV. Conclusion

For these reasons, the Court denies the Plaintiff's

Motion for a TRO.

An appropriate order will issue.

January /12/, 2016
Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE

10